## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| MINH B TRAN, | ) | Case No. 14-11837-BFK |
| | ) | Chapter 13 |
| Debtor. | ) | |

### MEMORANDUM OPINION
### INCORPORATING FINDINGS OF FACT
### AND CONCLUSIONS OF LAW

The Court held a trial on the merits on September 18 and 19, 2014, on the Court's Show

Cause Order requiring Mr. Huang and Ms. Chang to show cause why they should not be

sanctioned. Docket No. 21 (the "Show Cause Order"). For the reasons stated below, the Court

will impose sanctions against Mr. Huang. Also for the reasons stated below, the Court will

dismiss the Show Cause Order against Ms. Chang.

### Findings of Fact

The Court, having heard the evidence, makes the following findings of fact.

*A. The Debtor's Previous Bankruptcy Case.*

1.      This is not the Debtor's first bankruptcy case. On April 13, 2012, the Debtor filed

a Voluntary Petition under Chapter 13 in this Court. *In re Tran*, Case No. 12-12352-BFK. Mr.

Huang filed the petition on behalf of the Debtor.

2.      The case did not proceed smoothly. The Debtor proposed six Chapter 13 Plans,

none of which were confirmed. *See* Docket Nos. 16, 34, 41, 52–54, 60 and 65. The Trustee's

Objections to the Debtor's Plans repeatedly included the fact that the Debtor had not filed his tax

returns for 2011. *See* Docket Nos. 19, 35, 42, 55.

3.    The Trustee filed a Motion to Dismiss the case for, among other reasons, the Debtor's failure to provide his tax returns for 2011. Docket No. 43. The Trustee filed a second Motion to Dismiss, citing unreasonable delay that was prejudicial to the creditors. Docket No. 66.

4.    The Court ruled on August 22, 2013, that it would grant the Trustee's Motion to Dismiss. On August 28, 2013, the Court dismissed the case. Docket No. 74.

5.    Just after the Court ruled on August 22nd that the case would be dismissed, but before the Order dismissing the case was entered on August 28th, Mr. Huang filed an Application for Compensation (Docket No. 72) together with a Motion for Expedited Hearing (Docket No. 81), which the Court granted. Docket No. 85. He also filed a Motion to Reopen the case (Docket No. 80), which the Court also granted. Docket No. 89.

6.    The Court granted Mr. Huang's Application for Compensation on October 16, 2013, allowing him $2,866 in fees. Docket No. 90.

7.    Mr. Huang then filed a garnishment summons against his client, Mr. Tran, and against Wells Fargo Bank, N.A., as garnishee (although it is not clear to the Court that the Order allowing compensation of October 16th constituted a judgment on which execution could issue). Docket No. 94. After some skirmishing with Wells Fargo (Docket Nos. 100, 110), Wells Fargo sent Mr. Huang a check in the amount requested, $2,866. Docket Nos. 102, 103.

8.    On March 6, 2014, the Chapter 13 Trustee deposited the sum of $12,040.67 with the Clerk as unclaimed funds. Docket No. 104 (hereinafter, the "Unclaimed Funds"). The Trustee advised the Court during the evidentiary hearing in this matter that he had mailed a check in this amount to the Debtor, but the Debtor never cashed the check.

2

9.      Also on March 6, 2014, Bank of America filed a Motion for Relief from the

Automatic Stay with respect to the Debtor's home in Centreville, VA. Docket No. 107. The

Bank alleged that the Debtor was 23 payments in arrears on his mortgage, totaling $84,601.11.

*Id.*, ¶ 8. The Court granted this Motion without opposition on March 27, 2014. Docket No. 116.

10.     On May 15, 2014, the same day as Case No. 14-11837 was filed, as discussed

below, Mr. Huang filed a Motion for Return of the Unclaimed Funds on behalf of Mr. Tran.

Docket No. 119. The Court held a hearing on this Motion on July 24, 2014 (the "July 24th

hearing"). The Court granted this Motion without opposition from the Chapter 13 Trustee on

July 30, 2014. Docket No. 126.

B.    *The Filing of this Case (No. 14-11837).*

11.     Shortly after the dismissal of his first bankruptcy case, Mr. Tran again was in

need of bankruptcy relief. He called Ms. Chang in April, having been referred to her by a mutual

friend. Ms. Chang's office is in Maryland.

12.     Ms. Chang spoke with Mr. Tran by telephone. She recommended that Mr. Huang

handle the bankruptcy filing, since he had already represented Mr. Tran once in a bankruptcy

case, and because she was about to go out on maternity leave. Mr. Tran sent his information to

her via the Cloud (i.e., a remote server for which a login and password are required in order to

access documents). She then e-mailed Mr. Tran an Attorney-Client Retainer Agreement.[1]

---

[1]  There are two versions of the Attorney-Client Retainer Agreement in evidence. Tran Ex. No. 1; and Chang Ex.
No. 2. Tran Ex. No. 1 is signed by Mr. Tran. Chang Ex. No. 2 is not signed by Mr. Tran. Neither agreement is
signed by Ms. Chang. Ms. Chang testified that she e-mailed the Retainer Agreement to Mr. Huang and never saw it
again. She also testified that she e-mailed it to Mr. Tran without his identifying information (address, e-mail address
and phone number) included. The two Agreements contain different phone numbers and e-mail addresses for Mr.
Tran.

13.     A foreclosure was scheduled for Mr. Tran's home for May 15, 2014. Mr. Tran understood that Ms. Chang would coordinate the bankruptcy filing with Mr. Huang, with Ms. Chang essentially acting as the "project manager" with respect to the case. Mr. Huang would file the bankruptcy case, and Ms. Chang would focus on negotiating a loan modification for Mr. Tran's mortgage (though, Ms. Chang believed that achieving a loan modification was highly unrealistic in Mr. Tran's case).

14.     The Attorney-Client Retainer Agreement (both versions) provided for fees of: (a) $1,000 for the bankruptcy filing; (b) $1,000 for a Motion for a return of the Unclaimed Funds from the first bankruptcy filing; and (c) $350 per hour for Ms. Chang to work on a loan modification for Mr. Tran. Tran Ex. 1.

15.     Mr. Tran testified that he agreed to a fee of $500 for this case, and $500 for a Motion for a return of the Unclaimed Funds in Case No. 12-12352-BFK.

16.     On May 15, 2014, at 9:35 a.m., Ms. Chang wrote an e-mail to Mr. Huang and Mr. Tran, advising Mr. Tran to "send him [Mr. Huang] the $800 check," this being $500 for the filing of the bankruptcy petition and approximately $300 for the filing fee.

17.     Neither Ms. Chang nor Mr. Huang received any funds in connection with this case.

18.     Mr. Tran signed the Attorney-Client Retainer Agreement, and uploaded it to the Cloud. He gave Ms. Chang the login and password to retrieve the document. He also uploaded the signed Voluntary Petition to the Cloud.

19.     Ms. Chang e-mailed Mr. Huang the login and password for Mr. Tran's Cloud account.

4

20.      Mr. Huang accessed and downloaded the Voluntary Petition from the Cloud. He

filed the Voluntary Petition for Mr. Tran on May 15, 2014.[2]

21.      Mr. Huang did not meet with Mr. Tran before he filed the Petition on Mr. Tran's

behalf. Mr. Huang did not have a wet signature on the Petition before he filed it.

22.      Mr. Huang filed a Disclosure of Compensation pursuant to Bankruptcy Rule

2016(b). Docket No. 1; Huang Ex. 1. The Disclosure of Compensation stated that Mr. Huang had

received $1,000 in connection with the filing of the bankruptcy case.

23.      Mr. Huang did not file Schedules, a Statement of Affairs or a Chapter 13 Plan in

the case.

24.      Mr. Tran did not attend the first meeting of creditors, which was scheduled for

June 17, 2014.

25.      As a result of Mr. Tran's failure to file the required documents, and his failure to

attend the meeting of creditors, the Court issued a Notice to Show Cause as to why his case

should not be dismissed. Docket No. 12.

*C.  The July 9, 2014, Hearing Before Judge Mayer.*

26.      Judge Mayer held a hearing on the Notice to Show Cause on July 9, 2014. At the

hearing, the Chapter 13 Trustee argued that the case was filed solely for the purpose of delay,

and that the Debtor had not produced his tax returns, as is required of all Debtors. During the

course of the hearing, the following took place:

THE COURT: Mr. Huang, how much have you been paid in this case?

MR. HUANG: I have not been paid anything yet at this point.

---

[2]  The case initially was assigned to Judge Mayer, but was reassigned to the undersigned Judge. Docket No. 17.

Tr. 7/9/2014, Docket No. 15, at 6.

27.    This was inconsistent with Mr. Huang's Rule 2016(b) Disclosure of

Compensation, in which he stated that he had been paid $1,000 for the case. At the conclusion of

the hearing, the case was reassigned to the undersigned Judge.

D.  *The July 24, 2014, Hearing and the Dismissal of the Case.*

28.    The Court held a hearing on the Debtor's Motion for a Return of the Unclaimed

Funds in Case No. 12-12352, and on the Court's Notice to Show Cause in this case, on July 24,

2014.

29.    The Court ordered a return of the Unclaimed Funds to the Debtor, care of Mr.

Huang. Docket No. 126 (Case No. 12-12352-BFK). The funds currently are in Mr. Huang's

attorney trust account.

30.    Mr. Tran testified at the hearing, as follows:

Q [MR. GORMAN].  In this case, what's your fee arrangement with Mr. Huang?
A.      This case or the previous case?
Q.      This case.
A.      This case. It's -- the payment arrangement is through -- is related to the --
the other attorney, you know, handling a different matter.
Q.      Explain that to me.
A.      . . .  And I -- I had to -- I guess that attorney reached out to Mr. Huang
because on the record he was the attorney.  And so they -- they worked out an
arrangement where I would pay that attorney some amount and then portions of
that would go to Mr. Huang.
Q.      Who's that attorney?
A.      Sandy Chang.

. . .

Q.      All right, but do you see there where it says on line 1, the second line
down, "Prior to the filing of this statement, I received 1,000 dollars"?
A.      Yes, I see that.
Q.      Was that correct?
A.      I don't know.

6

Q.      You don't know what Mr. Huang got paid?

A.      To be frank, the -- the arrangement was I -- I'd spoken with the -- the other attorney, and she said that the fees would be paid, so I --

Q.      You're paying Ms. Chang and then she has an arrangement with Mr. Huang that you're not familiar with?

A.      How the funds are distributed from Ms. Chang --

Q.      Well, I want us to understand the mechanics. Have you paid Mr. Huang anything?

A.      Directly, no.

Q.      You pay Ms. Chang?

A.      Correct.

Q.      And then your understanding is she pays some amount to Mr. Huang?

A.      Whatever that amount is, yes.

Q.      But you don't know?

A.      Correct.

Q.      It's an arrangement between her and Mr. Huang?

A.      Correct.

Tr., 7/24/2014, Docket No. 128, at 9–10, 12–13.

    31.      The Court then inquired of Mr. Tran as to the fee arrangement with Ms. Chang.

Mr. Tran testified as follows:

THE COURT: Let me stop you there, Mr. Gorman, because just -- I want to know how much did you pay Ms. Chang in connection with this case or the loan mod or whatever it was.

THE WITNESS: Right. There -- there are like two parts -- two, three parts to it, and --

THE COURT: Okay.

THE WITNESS: -- the total invoice, I think there was some 2,800, and there's another 2,500. The exact number I'd have to look at the -- the contract with her to see, but --

THE COURT: Do you have that with you?

THE WITNESS: No, I don't. I didn't know to bring it today.

. . .

THE COURT: Wait, wait, wait, Mr. Gorman. $2,800 for what?

THE WITNESS: Can I -- can I go get the document and resubmit it to the Court? It's something about the -- the --

THE COURT: Where is it?

THE WITNESS: -- exit --

THE COURT: Is it here? Is it in your car?

THE WITNESS: No, it's at home.
THE COURT: Okay, well --

. . .

THE COURT: All right, well give us, to your best recollection for the time being, what was the 2,800 for?
THE WITNESS: I believe it's for -- one part was for the bankruptcy piece, one part was for the -- the loan modification efforts.
THE COURT: And the bankruptcy piece was for this case, the 2014 case?
THE WITNESS: Yes, it's related to this.
THE COURT: And then you said you paid her an additional 2,500?
THE WITNESS: It's a separate -- correct -- for a separate case.
THE COURT: And what was that for?
THE WITNESS: Around 2,500 or so, but then there has to be some like just hourly rates for other --
THE COURT: But what was the 2,500 for?
THE WITNESS: I believe it was for the -- the filing of the paperwork with the bank to get the mod and everything -- modification process.
THE COURT: Was any of it for the bankruptcy?
THE WITNESS: No.
THE COURT: All right. So the additional 2,500 was for loan modification efforts?
THE WITNESS: Right.
THE COURT: Is that fair to say?
THE WITNESS: Approximately, yes.

*Id.* at 14–16.

32.    At the conclusion of the July 24th hearing, the Court: (a) ordered that Mr. Tran's case would be dismissed with prejudice for a period of one year; and (b) issued an Order for Mr. Huang and Ms. Chang to show cause, if any, why they should not be sanctioned for, in Ms. Chang's case, apparent fee splitting in violation of Section 504(a) of the Bankruptcy Code, and in Mr. Huang's case, apparent fee splitting and for the inaccuracy of his Rule 2016(b) Statement. Docket No. 21.

33.    Mr. Tran retained new counsel, Ms. Regenhardt, and moved the Court to reconsider the dismissal of his case with prejudice. Docket No. 33.

8

*E.  The September 18 and 19, 2014, Hearing.*

34.     The Court held a hearing on the Order to Show Cause and on Mr. Tran's Motion to Reconsider on September 18 and 19, 2014. The Court denied Mr. Tran's Motion to Reconsider, but reduced the "with prejudice" portion of the Order from one year to 90 days. Docket No. 45.

35.     At the hearing, Mr. Tran testified that he has not paid Ms. Chang anything in connection with this case, nor has he paid Mr. Huang anything. The Court noted that Mr. Huang represented that he would receive $500 for the filing of this case (plus the filing fee), and that Ms. Chang's Retainer Agreement (both versions) stated that Mr. Tran would pay $1,000 for the bankruptcy case. The Court inquired of Mr. Tran who would get the other $500. He responded that he did not know.

36.     Mr. Tran testified that Ms. Chang was his primary point of contact for this bankruptcy case. He also testified that Ms. Chang advised him that filling out Schedules in this case was not necessary, and that it was not necessary for Mr. Tran to attend the first meeting of creditors, though on cross examination, he was quite vague about this testimony. Ms. Chang testified that she never advised Mr. Tran not to fill out the Schedules, and that she did not advise him that it was unimportant to attend the first meeting of creditors.

37.     Mr. Huang testified that he paid the filing fee on his credit card and that he has not received any fees in connection with this case. He testified that he was surprised to see Ms. Chang's Retainer Agreement, reciting a $1,000 fee for the filing of the bankruptcy case, and that he did not see the Retainer Agreement until Ms. Chang's counsel filed it with the Court in response to the Show Cause Order. He stated that he had not agreed to share his fee with Ms.

Chang. He advised Mr. Tran that the bankruptcy filing would stop the foreclosure on Mr. Tran's property, while he worked on a loan modification through Ms. Chang. He testified that he did not have a signed retainer agreement with Mr. Tran.

38.     Ms. Chang testified that after she sent the Retainer Agreement to Mr. Tran in April, she lost touch with him. She heard back from him on May 13 or 14, at which time he requested her services for the purpose of filing a bankruptcy case. After discussing the matter with Mr. Tran, she advised him that Mr. Huang would be in a better position to file a bankruptcy petition on behalf of Mr. Tran, because Mr. Huang had filed the previous case, and because she was about to go out on maternity leave. She testified that she did not know what Mr. Huang was going to charge for the case.

39.     She testified that she never received the Retainer Agreement back from Mr. Tran. She further testified that she never received any money in connection with this case.

### Conclusions of Law

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of Reference of the U.S. District Court for this District entered August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) (matters affecting the administration of the estate).

Further, the Court has the inherent authority to regulate the conduct of attorneys who appear before the Court. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–46 (1991); *McGahren v. First Citizens Bank & Trust Co. (In re Weiss)*, 111 F.3d 1159, 1171 (4th Cir. 1997); *Parker v. N.C. Agric. Fin. Auth.*, 341 B.R. 547, 554 (E.D. Va. 2006); *In re Dickson Properties, LLC*, Nos. 11–18617–BFK, 11–11656–BFK, 2012 WL 2026760, at *4 (Bankr. E.D. Va. 2012).

The Court will address Mr. Huang's conduct and Ms. Chang's conduct separately.

10

## I.    Mr. Huang's Conduct.

The Court will first address Mr. Huang's conduct in connection with this case.

### A.    *The Failure to Meet with Mr. Tran, and the Failure to Obtain a Wet Signature on the Petition in Case No. 14-11837-BFK.*

Local Rule 5005-1(D) of the Local Rules of this Court provides that "[e]ach petition filed must include an unsworn declaration *with the signature of all debtors* and must be verified by the signature of the debtor's attorney, if any." Local Rule 5005-1(D)(1) (emphasis added).  The Court's CM/ECF Policy 7 (Retention Requirements) further provides as follows:

> **Retention of Electronically Filed Documents.**    Documents that are electronically filed and require original signatures shall be maintained by the User until 3 years after the closing of the case.  If in the ordinary course of the User's business, the User maintains imaged copies of that person's records, the user may retain an imaged copy in lieu of the document with the original signature to the same extent that the User otherwise retains imaged records in the ordinary course of the User's business.  Upon request of the Court, the User shall provide such originally executed documents or imaged record, as the case may be, for review.

Case Management/Electronic Case Files (CM/ECF) Policy Statement 7(A).

This "wet signature" requirement has been the subject of three opinions from this Court. In *In re Wenk*, 296 B.R. 719 (Bankr. E.D. Va. 2002), then-Chief Judge Tice held that the electronic filing of a voluntary petition representing that the Debtor had signed the petition, when in fact the Debtor had not signed it, "amount[ed] to fraud." *Id.* at 725 ("The court must consider that Kane's action of filing a petition electronically purporting to have debtor's signature is no different than Kane physically forging debtor's signature and handing the petition over the counter to the clerk.") In *Wenk*, the Court was presented with the situation where two petitions were filed for the same debtor on the same day, by two different attorneys. The first attorney had been contacted by the debtor to stop a foreclosure and due to unforeseen circumstances the

11

debtor was unable to meet with the attorney. The attorney filed the petition for the debtor,

expecting the debtor to appear in his office later in the day to sign the petition. Unbeknownst to

the attorney, the client went elsewhere and a second attorney filed a petition on behalf of the

client the same day. The attorney who filed the petition without the client's signature was

sanctioned for the improper filing.

In *In re Alvarado*, 363 B.R. 484 (Bankr. E.D. Va. 2007), the attorney filed a bankruptcy

petition for the debtor, but failed to pay the filing fee. Rather than pay the fee in response to a

deficiency notice issued by the Clerk, the attorney simply filed a new bankruptcy petition on

behalf of the client, without the client signing the new petition and without the client's

knowledge. This resulted in two pending bankruptcy cases for the same debtor, because the first

case had not been closed as of the filing of the second case. The Court sanctioned the attorney,

calling the second petition "fraudulent and unauthorized." *Id.* at 492.

More recently, in *In re Smith*, Case No. 13–31565–KLP, 2014 WL 128385 (Bankr. E.D.

Va. 2014), the Court addressed a similar issue. In *Smith*, the Court was faced with a situation

where the debtor did not review or execute the schedules, statements, lists and Chapter 13 plan

(among other egregious ethical violations). Judge Phillips quite correctly noted:

> The implementation of electronic case filing ("ECF") in 1999
> fundamentally altered the functioning of the bankruptcy courts by eliminating the
> filing, processing and storage of mounds of paper and by allowing remote
> participation by practicing attorneys. Courts have been required to adopt rules and
> procedures necessary to preserve the integrity of the judicial process and
> safeguard the reliability of documents filed electronically. Despite the changes to
> the legal system occasioned by the development of this technology, the standards
> of care applicable to attorneys remain undiminished and the veracity, integrity and
> competence of attorneys continue to be essential to our system of justice.

12

*Id.* at *4.[3]

In this case, Mr. Huang never met with the client. He filed the petition based on Mr.

Tran's having uploaded the petition to the Cloud. Mr. Huang obtained the password from Ms.

Chang, downloaded the petition and filed it electronically with the Court. As noted by Judge

Phillips in the *Smith* case, despite these advances in technology that allow parties to

communicate remotely and to file papers electronically with the Court, there is still a

fundamental duty to meet with the client and to obtain the client's original signature on the

petition. The filing of a bankruptcy petition is an important, life-altering decision. The client

must consider the risks (the damage to one's credit, the transactional fees, and the possibility of a

failed Chapter 13 plan after paying into the plan for some period of time) with the potential

rewards (the automatic stay, a discharge and the possibility of a strip-off of wholly unsecured

liens). This is true even where, as here, the debtor has been through a bankruptcy filing on a

previous occasion.

The attorney further has duties to the Court, under Rule 9011, to insure that the petition is

not filed in bad faith. Under Rule 9011(b), the attorney certifies to the Court that "to the best of

the person's knowledge, information, and belief, *formed after an inquiry reasonable under the*

*circumstances*," the petition is not being presented for an improper purpose, is warranted by

existing law or a non-frivolous argument for the modification of existing law, and that the factual

contentions have evidentiary support. Fed. R. Bankr. P. 9011(b) (emphasis added). The filing of

a petition in bankruptcy is not subject to the 21-day safe harbor otherwise afforded litigants

---

[3]  The sanctions issued by Judge Phillips in the *Smith* case, and by Judge Huennekens in four companion cases, all
involving the same attorney, were affirmed by the District Court. *See In re Parker*, Case No. 3:14cv241, 2014 WL
4809844, at *8 (E.D. Va. 2014).

under Bankruptcy Rule 9011(c)(1)(A). *See* Fed. R. Bankr. P. 9011(c)(1)(A) (providing "except that this limitation [the 21-day safe harbor] shall not apply if the conduct alleged is the filing of a petition in violation of subsection (b)"). In a Chapter 13 case, the attorney is making a representation to the Court in filing a petition that the debtor has regular income and that the debtor's secured and unsecured debts do not exceed the allowable limits for a Chapter 13 case, not to mention that the debtor is capable of filing a feasible plan. *See* 11 U.S.C. §§ 109(e), 1325(a)(6). *See also In re Bouley*, No. 11–1682, 2011 WL 4458928, at *2 (Bankr. D. Haw. 2011); *In re Rose*, No. 09–00346, 2009 WL 2855802, at *2 (Bankr. D.D.C. 2009). There can be no "inquiry reasonable under the circumstances" where the attorney has not met with the client prior to filing the petition, and the fact that the client's home is scheduled for an imminent foreclosure does not excuse the reasonable inquiry requirement of Rule 9011(b). *See* Fed. R. Bankr. P. 9011(b). In this case, Mr. Huang had no idea whether Mr. Tran was eligible to file a Chapter 13 case at the time the petition was filed (and, of course, we cannot know the answer to this, because Mr. Tran never filed Schedules in the case).[4]

The Court finds that Mr. Huang violated Local Rule 5005-1(D), CM/ECF Policy 7(A) and Bankruptcy Rule 9011(b) in failing to meet with Mr. Tran and in failing to obtain an original signature on the petition before the petition was filed with the Court.

---

[4]   It also is not clear that the filing of this case provided any benefit to the Debtor at all, other than the imposition of the automatic stay for the first 30 days of the case. The previous case, Case No. 12-12352, was dismissed on August 28, 2013. Docket No. 74 (Case No. 12-12352). This case was filed on May 15, 2014, within one year of the dismissal of the previous case. No motion was filed in this case to extend the automatic stay under 11 U.S.C. § 362(c)(3). Bank of America was free to initiate foreclosure proceedings at the expiration of the first thirty days in this case.

*B. The Inaccuracy of Mr. Huang's Rule 2016(b) Statement in Case No. 14-11837.*

Mr. Huang's Rule 2016(b) Disclosure of Compensation was materially inaccurate, in two respects. First, it states: "Prior to the filing of this statement I have received $1,000." Huang, Ex. 1, at ¶ 1. Disclosure of Compensation. In fact, Mr. Huang had not received any money prior to the filing of the case. Second, Mr. Huang had not agreed to accept $1,000 in connection with this case. Rather, Mr. Huang agreed to accept $500 in connection with the filing of this bankruptcy case, and $500 for the Motion for a Return of the Unclaimed Funds in the previous case, Case No. 12-12352.[5]

The Court finds that Mr. Huang's Rule 2016(b) Statement was materially inaccurate, and violated Rule 9011.

*C. Was There Fee Splitting or an Agreement to Split the Fee?*

Bankruptcy Code Section 504(a) provides as follows:

Except as provided in subsection (b) of this section, a person receiving compensation or reimbursement under section 503(b)(2) or 503(b)(4) of this title may not share or agree to share—

> (1) any such compensation or reimbursement with another person; or

> (2) any compensation or reimbursement received by another person under such sections.

11 U.S.C. § 504(a).

---

[5] The U.S. Trustee argues that there was a third inaccuracy, in that the Rule 2016(b) Statement states that Mr. Huang received the $1,000 from the Debtor (Disclosure of Compensation at ¶ 2), when in fact, it was Mr. Huang's expectation that he would receive the funds ($500 for this case, and $500 for the Unclaimed Funds Motion) from Ms. Chang. The Court does not view this to be a material misrepresentation. Had Ms. Chang received any funds from the Debtor, she would have been required to hold the funds in trust for the Debtor. In effect, beneficial title to the funds (had they been received) would have remained with Mr. Tran, not with Ms. Chang.

The cases under Section 504(b) generally turn on whether the individuals involved are members or "regular associates" of the law firm in question. *See In re Ferguson*, 445 B.R. 744, 753, 755 (Bankr. N.D. Tex. 2011); *In re Worldwide Direct, Inc.*, 316 B.R. 637, 647–48 (Bankr. D. Del. 2004). The prohibition on fee sharing in Section 504(a) is absolute. *In re Smith,* 397 B.R. 810, 817 (Bankr. E.D. Tex. 2008); *In re Peterson*, Nos. 04–01469, 04–01577, 04–01748, 04–01851, 2004 WL 1895201, at *4 (Bankr. D. Idaho 2004).

There is no question in this case that the exceptions contained in subsection (b) of Section 504 do not apply in this case. Mr. Huang is not an associate, member or partner of Ms. Chang's office. Mr. Huang's Rule 2016(b) Statement in this case states: "I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm." Huang, Ex. 1, at ¶ 4.

No actual fee sharing has occurred in this case; Mr. Tran never paid the fee. Section 504(a), though, also prohibits agreements to share compensation. The question is: was there an agreement to share compensation between Ms. Chang and Mr. Haung? The testimony adduced at the July 24th hearing indicated that there was fee splitting. *See* Tr., 7/24/2014, at 10 (Mr. Tran: " . . . they worked out an arrangement where I would pay that attorney some amount and then portions of that would go to Mr. Huang"). Mr. Tran testified that he agreed to a figure of $2,800 for the bankruptcy case, all of which was to be paid to Ms. Chang.  Mr. Huang's Rule 2016(b) Statement indicated that he had been paid $1,000 for the case. The inference was, therefore, that Ms. Chang was to receive a part of the $2,800 fee, simply for referring Mr. Tran to Mr. Huang, a scheme plainly proscribed by Section 504(a). Alternatively, one might infer the same conclusion from the testimony adduced at the September 19th hearing. Ms. Chang's Retainer Agreement

16

provided for a fee of $1,000 for the bankruptcy case, and Mr. Huang testified that he agreed to accept $500 for the case.

The Court is constrained to find, based the testimony adduced at the September 19th hearing, however, that there was no agreement to share the fee. First, Mr. Tran testified at the July 24th hearing to a $2,800 for the bankruptcy case, which is not borne out by any of the Exhibits, nor by any testimony from either of the lawyers. Mr. Tran's testimony was confusing, self-contradictory and in the end not believable. The Court is unwilling to impose sanctions based on such a thin reed.

Second, the Court accepts Ms. Chang's testimony to the effect that she sent Mr. Tran the Attorney-Client Retainer Agreement, and that she lost track of him thereafter, except for the e-mail of May 15, 2014 (which itself was necessitated by Mr. Huang's misunderstanding that Mr. Tran had paid Ms. Chang for the bankruptcy filing when he had not). The evidence indicates that Mr. Tran filled in the personal information in the Retainer Agreement and uploaded it to the Cloud. The evidence is undisputed that Mr. Huang had the login and password to Mr. Tran's Cloud account, but there is no evidence that Mr. Huang ever downloaded or reviewed the Retainer Agreement. He testified that the first time he saw the Retainer Agreement was after the Court issued its Show Cause Order and ordered Ms. Chang to file with the Court copies of any retainer agreements that she had with Mr. Tran. Simply put, there was a disconnect between Mr. Huang and Ms. Chang as to the representation of Mr. Tran. The Court cannot find that there was an agreement to share fees where there was no meeting of the minds between the two attorneys.

17

The Court finds that there was no fee sharing nor an agreement to share fees in this case. The Court will not impose any sanctions on Mr. Huang for fee sharing in violation of Section 504(a).

    *D.  The Sanction to be Imposed.*

Although this is not strictly a Rule 9011 matter (it also involves Section 105(a) and the Court's inherent powers to regulate the conduct of attorneys appearing before it), the Court is guided by the principle incorporated in Bankruptcy Rule 9011(c)(2), which states as follows:

> *Nature of Sanction; Limitations.* A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

Fed. R. Bankr. P. 9011(c)(2).

In this case, the Court has found on Mr. Huang's part: (a) a petition filed without a wet signature and no meeting with the client; (b) a materially inaccurate Rule 2016(b) Statement; but (c) no proscribed fee sharing. The Court will order that Mr. Huang forfeit all compensation in connection with this case other than reimbursement of the filing fee, which he can take out of the Unclaimed Funds that he is holding. The Court further will order that Mr. Huang be suspended from practice before this Court for a period of three (3) months. The Court finds that these sanctions are the least harsh sanction available that will deter repeated violations of the Rules by Mr. Huang.

## II.      Ms. Chang's Conduct.

Ms. Chang has been the subject of prior disciplinary proceedings before the Court. In November 2011, the Court entered a Stipulation and Agreed Order suspending Ms. Chang from practicing before the Court for a period of one year and imposing other sanctions, for Ms. Chang's role in the filing of false credit counseling certificates with the Court. *See, e.g., In re Prudent,* Case No. 11-14559-BFK, Docket No. 50. She has since been reinstated, after the one year suspension expired.

Ms. Chang was the subject of similar disciplinary proceedings before the U.S. Bankruptcy Courts for the District of Maryland and for the District of Columbia, for similar conduct. *In re Chang*, Miscellaneous Case No. 11MC217, 2012 WL 6019310 (D. Md. 2012); *In re Chang*, 83 A.3d 763 (D.C. 2014). More recently, Ms. Chang has been found to have willfully violated the automatic stay (11 U.S.C. § 362) against her own client. *In re Fernandez*, No. 12–15790PM, 2014 WL 1329871 (Bankr. D. Md. 2014), *aff'd* 2014 WL 3845857 (D.Md. 2014).

Ms. Chang did not sign nor file the petition in this case. She, therefore, was under no duty to meet with the client and had no duty to insure that a wet signature was obtained on the petition. She did not file a Rule 2016(b) Statement and was not required to do so.  As the Court has found in Part I(C) above, the Court is unable to find, based on the evidence presented, that there was fee sharing, or an agreement to share fees in this case, in violation of Section 504(a) of the Code.

Finally, the Court is troubled by Mr. Tran's testimony, to the effect that Ms. Chang advised him that he did not need to attend the meeting of creditors, and that he did not need to worry about filling out the Schedules. If this were proven, it would be a serious ethical lapse on

the part of any attorney practicing before this Court. But, Mr. Tran's testimony was vague on this point and in the end, not credible. The Court will decline to sanction Ms. Chang based solely on Mr. Tran's testimony.

Accordingly, the Court will dismiss the Show Cause Order as against Ms. Chang.

**Conclusion**

For the foregoing reasons, the Court will enter a separate Order that will provide:

1.      Mr. Huang is suspended from the practice of law before this Court for a period of three (3) months, during which his electronic filing privileges shall not be available to him.

2.      Mr. Huang shall not receive, and shall forfeit, all compensation in connection with this case, with the exception that he may reimburse himself the filing fee ($310) out of the Unclaimed Funds in his attorney trust account. The balance of the funds in the attorney trust account shall be distributed to the Debtor.

3.      The Show Cause Order will be dismissed as against Ms. Chang.

4.      The Court's Order shall be without prejudice to the U.S. Trustee's right to move to examine counsel's transactions with the Debtor in this or any other case pursuant to 11 U.S.C. § 329, or to move for Rule 2004 Examinations of any person or party. The Debtor, Ms. Chang and Mr. Huang are entitled to object to any further examinations, should they choose to do so.

5.      The Clerk will mail copies of this Memorandum Opinion to the parties below, or shall provide cm-ecf notice of its entry.

Date: __Oct 17 2014_____          /s/ Brian F. Kenney
                                       _____
                                       Brian F. Kenney
Alexandria, Virginia                   United States Bankruptcy Judge

20

Entered on Docket:Oct 17 2014

Copies to:
Minh B Tran
5301 Poplar Valley Ct
Centreville, VA 20120
*Chapter 13 Debtor (barred)*

Jeremy Calvin Huang, Esquire
Huang Law, PLLC
4120 Leonard Drive
Fairfax, VA 22030
*Counsel for the Debtor*

Linda Dianne Regenhardt, Esquire
Linda Regenhardt, L.L.C.
100 N. Pitt Street
Suite 206
Alexandria, VA 22314
*Counsel for the Debtor*

Sandy Y. Chang, Esquire
The Chang Law Firm
1 Research Court
Suite 140
Rockville, MD 20850

Thomas P. Gorman, Esquire
300 N. Washington St. Ste. 400
Alexandria, VA 22314
*Chapter 13 Trustee*

Bradley David Jones, Esquire
Office of the United States Trustee
115 South Union Street, Suite 210
Alexandria, VA 22314
*Counsel for the U.S. Trustee*